**ACADEMY OF AMBULATORY FOOT SURGERY, et al., Plaintiffs,**

v.

**The AMERICAN PODIATRY ASSOCIATION, et al., Defendants.**

**80 Civ. 6169 (CBM).**

United States District Court,
S. D. New York.

May 15, 1981.

Burns, Jackson, Summit, Rovins & Spitzer by Wynne B. Stern, Jr., New York City, for plaintiffs.

Schlussel, Lifton, Simon, Rands, Kaufman, Lesinski & Jackier by Mark Schlussel, Southfield, Mich., for defendants The American Board of Podiatric Surgery, Inc., Thomas V. Melillo, John L. Bennett.

Edward Blaney, New York City, for defendants United Medical Service, Inc. and Associated Hospital Service of New York.

Bergson, Borkland, Margolis & Adler by Howard Adler, Jr., Donald L. Hardison, Edward J. Westbrook, Washington, D. C., for defendants American Podiatry Association, Council on Podiatry Education, Robert Giudice, Norman Klombers, Warren Ball, The California Podiatry Association, The Pennsylvania Podiatry Association, The Podiatry Society of the State of New York.

## MEMORANDUM OPINION AND ORDER

MOTLEY, District Judge.

Now pending before the court are three motions to dismiss some, or all, of the complaint in this action. The plaintiffs have responded to these motions and moved in turn for leave to amend the complaint. A brief description of the facts relevant to all

pending motions will be followed by discussion of each motion individually.

*Facts*

The underlying dispute in this antitrust suit is between various professional associations whose members are podiatrists. The plaintiffs are the Academy of Ambulatory Foot Surgery (AAFS), the American Board of Ambulatory Foot Surgery (ABAFS), and named individual members of the AAFS and ABAFS who seek class certification. The primary defendants are the American Podiatry Association (APA) and the Podiatric Society of the State of New York (the New York Society). The New York Society is the APA's affiliate in New York state. The Associated Hospital Services of New York (Blue Cross) and United Medical Services, Inc. (Blue Shield) are also defendants.

Briefly speaking, this lawsuit is one battle in what appears to be an ongoing jurisdictional war between the APA and the AAFS/ABAFS. The complaint alleges a variety of anticompetitive acts on the part of APA and its New York affiliate society designed to injure and retard the growth of the AAFS and the ABAFS. At the center of the suit is the APA's alleged refusal to accept as valid the certification by AAFS/ABAFS of podiatrists to perform certain types of podiatric procedures. Blue Cross and Blue Shield have been sued because of their alleged refusal to utilize podiatrists not certified by the APA to perform certain podiatric services connected to their insurance programs.

1. *The APA's Motion to Dismiss for Improper Venue*

The APA contends that the complaint must be dismissed with respect to it because venue is not proper in this District. The applicable venue provision is 15 U.S.C. § 22, which provides:

Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

Plaintiffs concede that since the APA is a District of Columbia corporation, it is not an inhabitant of this District. Instead, plaintiffs rely on the portion of 15 U.S.C. § 22 allowing venue in any district where a defendant "transacts business."[1] In what has come to be the accepted interpretation of 15 U.S.C. § 22, the Supreme Court has construed the statute to provide for venue whenever a defendant transacts business of "any substantial character" in the district where suit is filed. *United States v. Scophony Corp.,* 333 U.S. 795, 809, 68 S.Ct. 855, 862, 92 L.Ed. 1091 (1948). The term "transacting business" is to be applied as a "practical, everyday business or commercial concept." *Banana Distributors Inc. v. United Fruit Co.,* 269 F.2d 790, 794 (2d Cir. 1959). For the reasons given below, this court concludes that the APA may not be properly sued in this District pursuant to 15 U.S.C. § 22.

█ The APA does not maintain an office in this District, is not licensed to do business here and does not have any employees or agents in this District. All the APA's books and records are maintained in Washington, D. C. It neither owns, rents nor leases any property in this District, and it does not maintain any sort of bank account here. The APA has 7738 members, 313 of whom reside in New York. The APA has not appointed an agent for service of process in New York. The last APA annual meeting held in New York took place in 1964.

█ Moreover, despite plaintiffs' suggestion, this court refuses to impute the activities of the New York Society to the APA

---

1. The portion of 15 U.S.C. § 22 which provides for venue in a district where the defendant is "found" has been interpreted to refer to a defendant's presence in a district through the presence of agents or officers carrying on the defendant's business in a district. *See Iowa Chiropractic Society v. Iowa Medical Society,* 501 F.Supp. 970, 976 (S.D.Iowa 1980). Plaintiff does not contend here that APA is "found" in this District for purposes of 15 U.S.C. § 22.

for purposes of determining whether the APA transacts business in this District. The New York Society is separately incorporated and has a separate staff. It is financially self-sufficient, and maintains its own dues structure. Certainly there is a parallel between the APA's constitution and bylaws and the constitution and bylaws of the New York Society. Also, members of the New York Society must be members of the APA. Finally, disciplinary decisions made by the New York Society are reviewable by the APA. Nevertheless, on the record before this court, it appears that the New York Society "is autonomous in the same way that a local association of the American Medical Association was found to be autonomous in *Elizabeth Hospital, Inc. v. Richardson*, 167 F.Supp. 155 (W.D.Ark. 1958), *aff'd*, 269 F.2d 167 (8th Cir. 1959), *cert. denied*, 361 U.S. 884 [, 80 S.Ct. 155, 4 L.Ed.2d 120.]" *Friends of Animals, Inc. v. American Veterinary Medical Association*, 310 F.Supp. 620, 624 (S.D.N.Y.1970) (*Friends of Animals*).

In *Friends of Animals* this court dismissed a suit by Friends of Animals, Inc. against the American Veterinary Medical Association (AVMA) because the AVMA did not transact sufficient business in this District to make venue proper under 15 U.S.C. § 22. The decision was based, in part, on the conclusion that the AVMA's New York affiliate society was sufficiently distinct from the AVMA to preclude imputing its activities to AVMA for purposes of determining venue. The only potentially significant difference between the relationship of the AVMA and its constituent society and the APA and the New York Society in this case is the collection by the New York Society of dues for the APA. However, after considering the record, this court finds that collection of APA dues by the New York Society is merely clerical assistance rendered to the APA by its New York affiliate. The New York Society simultaneously collects its own dues, and the APA dues collected are simply forwarded to Washington, D. C. Collection of dues for the APA is insufficient grounds for imputing all of the New York Society's activities in this District to the APA.

*Friends of Animals* also provides a useful perspective on some of the contacts which the APA does have with this District. In *Friends of Animals* this court observed that "[a] professional association does not 'transact business' in a judicial district merely because some of its members reside in the district and receive the association's publications there." 310 F.Supp. at 624. *See also Golf City, Inc. v. Wilson Sporting Goods Co., Inc.* 555 F.2d 426, 437–38 (5th Cir. 1975). Thus, the presence of APA members in this District, and the receipt by them of APA literature and publications, will not be sufficient contact with this District to constitute "transacting business" for purposes of 15 U.S.C. § 22.

Another important reason for granting the APA's instant motion to dismiss is the sporadic nature of its certification and evaluation activities in this District. For instance, during the four year period covered by the statute of limitations applicable to the antitrust violations here alleged, APA has made only one trip into this District for evaluation purposes. The trip occurred in 1978 when representatives of the APA evaluated the Jewish Memorial Hospital's podiatric residency program. This lack of regular evaluation activities serves to distinguish this case from two decisions primarily relied upon by the plaintiffs, *Levin v. Joint Commission on Accreditation of Hospitals*, 354 F.2d 515 (D.C.Cir.1965) (*Levin*) and *Bogus v. American Speech and Hearing Association*, 389 F.Supp. 327 (E.D. Pa.1975) (*Bogus*). *Levin* and *Bogus* are two cases in which venue was found to exist pursuant to 15 U.S.C. § 22 in suits against association defendants which resided outside the forum district. In each case, the decision was clearly reliant upon the continuing evaluation and licensing activities of the particular association involved. *See Levin v. Joint Commission on Accreditation of Hospitals, supra*, 354 F.2d at 518; *Bogus v. American Speech and Hearing Association, supra*, 389 F.Supp. at 330.

A variety of other non-financial contacts pointed to by plaintiffs prove, upon inspec-

tion, to be either irrelevant or inapplicable. The APA continuing education program held at La Guardia Airport is, since La Guardia Airport is in Queens, located in the *Eastern* District of New York. The fact that a certain number of APA members serving on various Standing Committees in the last four years have resided in this District is coincidental and irrelevant to whether the APA "transacts business" here. The APA's affiliation with the National Association of Chiropodists, Inc., a New York corporation, amounts to a short meeting every five years to keep the corporation alive in an effort to prevent other parties from using the corporate name.

An examination of the record reveals only one basis on which the APA could conceivably be found to be "transacting business" in this District. Venue could be found as a result of advertising revenue obtained from advertisers in this District who have placed advertisements in the APA's magazine, entitled the *APA Journal* (*Journal*) and sales of APA related articles, desk references, and other audio-visual material. As will be discussed in more detail below, the APA undeniably derives appreciable income from advertisers in this District. However, in the circumstances of this case, this advertising income is not dispositive. First, there is actually a very attenuated relationship between the APA and the advertising revenue in question. The *Journal* arranges its advertising through a medical book publishing company located in Baltimore, Maryland. This company in turn deals with advertising agents throughout the country, including agencies located in this District. Those agencies in turn arrange advertising with individual advertisers.

Second, the APA's business connection with this District as a result of advertising revenues and product sales is considerably lessened by correcting the figures for these activities to reflect only revenue derived from this District as opposed to revenue derived from the entire state. APA correctly points out that a number of the figures cited by plaintiffs in their opposing papers reflect all sales and advertising de-

rived from the entire state of New York. When these figures are corrected to show only sales and advertising revenue from this District, the figures are substantially reduced. For instance, plaintiffs claim that documents obtained through discovery reveal $59,452.07 in APA advertising revenue from this District in 1977. In fact, that figure represents APA advertising revenue derived from all of New York state. Only $18,824.31 of the larger figure originated in this District. The discrepancies for figures relating to sales of APA products mentioned above are of a similar magnitude, although the total amounts involved are considerably smaller.

Ultimately this court's conclusion about the APA's business presence in this District is a common sense determination of whether, as a "broader business conception," the APA engages in "any substantial business operations" in this District. *United States v. Scophony Corporation of America*, 333 U.S. 795, 807, 68 S.Ct. 855, 861, 92 L.Ed. 1091 (1948). Upon review of the entire record, this court concludes that the business transactions engaged in by the APA are either "occasional and sporadic" or too tangentially related to this District to constitute "transacting business" for purposes of 15 U.S.C. § 22. *Friends of Animals v. American Veterinary Medical Association, supra*, 310 F.Supp. at 624.

2. *Plaintiff's Motion to Amend the Complaint*

Plaintiffs have moved to amend the complaint in a variety of ways. Briefly speaking, the proposed amendment would do the following: (1) add a defendant class represented by the New York Society, (2) add individual causes of action on behalf of the AAFS and ABAFS, and (3) contract the size of the proposed plaintiff class. As all parties concede, leave to amend must be freely granted, and amendments are generally accepted absent futility or undue prejudice. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Defendants' allegations of prejudice are conclusory and unpersuasive. Certainly

there is no basis for characterizing the amendments as futile at this time. Defendants' most persuasive arguments concerning the proposed amended complaint all involve the changes of existing proposed classes and the creation of new classes. These arguments are more appropriately addressed in the context of motions to certify the proposed classes. Leave to amend is granted.

### 3. *The Motion by APA and the New York Society to Dismiss the Complaint as to AAFS and ABAFS*

The New York Society and the APA have moved to dismiss AAFS and ABAFS from this action as plaintiffs because these two plaintiff associations allegedly lack standing to sue for damages suffered by their individual members. Since the court has granted leave to file an amended complaint which contains claims for relief from both the ABAFS and the AAFS in their corporate capacities, and not on behalf of their individual members, this motion is moot. Accordingly the motion is denied.

### 4. *Blue Cross/Blue Shield's Motion to Dismiss*

■ Blue Cross/Blue Shield has made a motion to dismiss pursuant to Fed.R.Civ.P. 12(b) for alleged failure by plaintiffs to state a claim upon which relief may be granted. Essentially plaintiffs allege participation by Blue Cross/Blue Shield in a conspiracy or combination with certain other defendants to injure AAFS, ABAFS, and the named individual plaintiffs. Plaintiffs point to two specific practices as acts in furtherance of the alleged conspiracy: (1) denying enrollment on "Second Surgical Opinion Panels" to podiatrists not certified by the APA, and (2) denying non-APA certified podiatrists the benefits of a new specialty code utilized by Blue Cross/Blue Shield known as "Code 94." New York state insurance law presently requires a second medical opinion before certain types of medical expenses may be reimbursed.

Blue Cross/Blue Shield responds by claiming: (1) the membership of the "Second Surgical Opinion Panels" is determined in "a manner allowable and prescribed by New York State law"; and (2) Code 94 was originally created by Medicare, and now confers no economic benefit. Reply Affidavit of Edward T. Blaney at pg. 3. Both of these arguments are insufficient grounds for granting a motion to dismiss, since each one would entail assumption by this court of important facts which are now a matter of dispute. In connection with the composition of Second Surgical Opinion Panels, for instance, it is clear that Blue Cross/Blue Shield does decline to use non-APA certified doctors to render such opinions. How much discretion does Blue Cross/Blue Shield have in the selection of podiatrists to render second opinions? Has that discretion, if any, been exercised improperly? What contact, if any, exists between APA and Blue Cross/Blue Shield, and what effect did such contact, if any, have on the choice of podiatrists to render second opinions? These are just a few of the questions for which this court would have to assume answers to grant the instant motion.

As for the alleged worthlessness of a Code 94 designation, the factual assumptions necessary to dismiss at this stage are as extreme as those connected with the staffing of second opinion panels. Certainly Blue Cross/Blue Shield has averred that podiatrists performing a given procedure are paid the same rate by Blue Cross/Blue Shield regardless of whether the podiatrist involved has a Code 94 certification. However, is this court to assume that lack of a Code 94 certification does not result in loss of professional standing, or the opportunity to obtain increased business in the future? The impact and significance of the Code 94 designation is unclear at this time. A motion to dismiss may only be granted if a plaintiff will be unable to prove a set of facts which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Such a conclusion is clearly premature with respect to the claims alleged against Blue Cross/Blue Shield.

*Conclusion*

In conclusion, for the reasons just given, plaintiffs may file an amended complaint;

the complaint is dismissed as to APA; and all other pending motions are denied.

SO ORDERED.