Dorothy PRESSER, Plaintiff,

v.

KEY FOOD STORES COOPERATIVE, INC., Defendant.

No. 01–CV–8059 (ILG).

United States District Court, E.D. New York.

Oct. 20, 2003.

Michael R. Curran, Rego Park, NY, for plaintiff.

Douglas P. Catalano, Fulbright & Jaworski LLP, John A. Snyder, II, Jackson Lewis LLP, New York City, for defendant.

### MEMORANDUM & ORDER

GLASSER, District Judge.

Plaintiff Dorothy Presser ("Presser" or "Plaintiff") originally brought this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 626 *et seq.*, the Older Worker's Benefits Protection Act ("OWBPA"), 29 U.S.C. § 626(f), the Worker Adjustment and Retraining Notification Act

("WARN"), 29 U.S.C. §§ 2101 *et seq.*, the New York State Human Rights Law, N.Y. Exec. L. §§ 290 *et seq.*, and the New York City Human Rights Law, Title 8 of the New York City Charter & Administrative Code. She named as Defendants her former employer, Key Food Stores Cooperative, Inc. ("Key Food" or "Defendant") and Grocery Haulers, Inc., which has settled with Presser. By Memorandum and Order dated December 3, 2002, this Court dismissed Presser's claims under the ADEA and the OWBPA, leaving only her WARN Act claim and state law discrimination claims. Pursuant to Fed. R.Civ.P. 15(a), Presser now seeks to amend her complaint to convert her individual WARN Act claim into a class action.

## FACTUAL BACKGROUND

This action arose out of Presser's employment with Key Food, a food cooperative of approximately 300 to 400 employees that provides distribution services and support to networked supermarkets throughout the New York City area. (Proposed Am. Compl. ¶ 14.) Presser was employed at Key Food's central office facility as a typesetter for twenty-four years. (Proposed Am. Compl. ¶ 19.) At the time of her termination, she was sixty-five years old and earned $715.00 per week. (Proposed Am. Compl. ¶¶ 13, 25.)

On March 10, 2003, Key Food reportedly notified the employees at the central office facility of an impending reorganization and restructuring effective May 5, 2000. (*See* Def. Mem. at 4; Proposed Am. Compl. ¶ 21.) Presser claims that she never received this notice. The May 5th date passed and on June 22, 2000, Presser and the staff at the central office facility received a letter from Richard Pallitto, the Chief Executive of Key Food, (Prop. Am. Compl. ¶ 22, Ex. A [hereinafter Pallitto letter]), which began with a reference to the earlier notice:

> As you are aware, on or about March 10, 2000 the Company provided you with notice that there would be a mass layoff and/or plant closing arising out of the sale

of a portion of the business, and that the services of employees at [the central office facility] would no longer be required as of May 1, 2000.

(Pallitto letter ¶ 1.) The letter went on to state that the "permanent plant closing and/or mass layoff" would occur on July 17, 2000. (Pallitto letter, *supra*, ¶ 2.)[1]

On July 28, 2000, Presser and several other employees met with a manager at Key Food who informed them that they should not report to work the following week. (Proposed Am. Compl. ¶ 28.) Presser did not return to work and on August 4, 2000, she received a phone call from an employee in the Key Food payroll department who told her it was necessary to sign a release in order to get her final paycheck. Presser refused to sign the release. (Proposed Am. Compl. ¶¶ 29, 30.) When Presser's paycheck still did not arrive she contacted an attorney who wrote to Key Food on her behalf. Eventually, she received a check for accrued leave time but without compensation for vacation and sick days. (Proposed Am. Compl. ¶ 32.)

Key Food sent Presser two additional documents dated August 1, 2000: a letter of termination with release, (Proposed Am. Compl. Ex. B [hereinafter release]), and an accounting of the ages of workers laid off, (Proposed Am. Compl. Ex. C [hereinafter accounting]). The release offered Presser $7,150 in severance pay—an amount equal to ten weeks' salary—in return for her "discharge and release of all claims, obligations, and demands … against [Key Food]," including claims under Title VII, the OWBPA, New York State Human Rights Law, and the WARN Act. (Release, *supra*, ¶¶ 2, 3.) The release encouraged her to consult an attorney and gave her forty-five days "in which to consider whether [she wished] to enter into this agreement, and that [she had] elected to enter into this agreement knowingly and voluntarily," and allowed her to revoke the agreement within seven days. (Release, *supra*, ¶ 4.)

---

1. The Pallitto letter cites the WARN Act several times: first, that the March 10, 2000 and June 22, 2000 letters constituted valid notice under the WARN Act; and second, that appropriate WARN Act notices were sent to the New York Department of Labor and the Mayor of New York City. (Pallitto letter, *supra*, ¶¶ 1, 3.)

The accounting details the number of workers terminated and their ages in order to comply with the OWBPA. (Accounting, *supra*, ¶ 1.) According to the accounting, within the central office facility fifty-three administrative/clerical workers were terminated while fifty-four were retained. (Accounting, *supra*, ¶¶ 2–3.) At this time, Plaintiff knows of no employees who, like her, refused to sign the release. (Proposed Am. Compl. ¶ 31.)

In January 2001, Presser filed charges against Key Food with the United States Equal Employment Opportunity Commission ("EEOC"), (Proposed Am. Compl. Ex. 1), which later dismissed the charges and provided Presser with a right-to-sue letter, (Proposed Am. Compl. Ex. 2). Accordingly, Presser brought this action in federal court against Key Food under the ADEA, 29 U.S.C. §§ 626 *et seq.*, the OWBPA, 29 U.S.C. § 626(f), the WARN Act, 29 U.S.C. §§ 2101 *et seq.*, the New York State Human Rights Law, N.Y. Exec. L. §§ 290 *et seq.*, and the New York City Human Rights Law, Title 8 of the New York City Charter & Administrative Code. By Memorandum and Order dated December 3, 2002, this Court dismissed Presser's claims under the ADEA and OWBPA because she had failed to file within ninety days of her receipt of the right-to-sue letter as required by statute.

In her original complaint, Plaintiff asserted her WARN Act claim as an individual action. She later moved for class certification before Magistrate Judge Go who requested that Plaintiff withdraw the motion for class certification without prejudice to reinstating or refiling should leave to amend be granted by this Court. Pursuant to Fed.R.Civ.P. 15(a), Presser now seeks to amend her complaint to convert her individual WARN Act claim into a class action. The Proposed Amended Complaint defines the proposed class as "employees who received ineffective WARN Act notice over the three year period prior to Plaintiff instituting suit as part of Defendant's plant closing and/or mass layoff of Key Food employees" and the sub-classes as follows:

(1) non-releasor class members who may or may not be union members and

(2) releasor class members who may or may not be union members whose releases were void.

(Pl.'s Reply Mem. at 14.) Plaintiff estimates that the entire class will include 300 to 400 former and present employees of Key Food. (Pl.'s Mem. at 5.) On behalf of herself and this class, Presser seeks statutory damages, costs, and attorneys fees pursuant to the WARN Act, 29 U.S.C. § 2104. If leave to amend is granted, Presser plans to move for certification of the proposed class pursuant to Fed.R.Civ.P. 23(c) after a period of limited discovery. (Pl.'s Mem. at 2).

## DISCUSSION

Plaintiff's substantive claim is that Key Food violated the WARN Act, 29 U.S.C. § 2102(a), which mandates that "[a]n employer shall not order a plant closing or mass layoff until the end of a 60–day period after the employer serves written notice of such order" to the affected employees. *International Association of Machinists and Aerospace Workers v. Compania Mexicana de Aviacion (IAM)*, 199 F.3d 796, 798 (5th Cir. 2000). Damages for a violation include "back pay for each day of violation," § 2104(a)(1)(A), "reduced by ... any voluntary and unconditional payment by the employer to the employee that is not required by any legal obligation," § 2104(a)(2)(B). An employer may make such payments in consideration for an employee's release of claims against it, including WARN Act claims. *IAM*, 199 F.3d at 798–99; *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 151–52 (3d Cir.1998) (holding that ERISA payments should not be subtracted from WARN Act damages because they were not made voluntarily).

Plaintiff seeks to amend her complaint to convert her individual WARN Act claim into a class action. Pursuant to Fed.R.Civ.P. 15(a), leave to amend "shall be freely given when justice so requires" in the absence of any countervailing factors such as "undue delay, bad faith, undue prejudice to the opposing party, or futility of the amendment." *Coney Island Resorts, Inc. v. Giuliani*, 103 F.Supp.2d 645, 657 n. 8 (E.D.N.Y.2000) (Glasser, J.) (quoting *Foman v. Davis*, 371 U.S.

178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Although Plaintiff need not establish the factual merits of her proposed amendment, *S.S. Silberblatt, Inc. v. East Harlem*, 608 F.2d 28, 42–43 (2d Cir.1979), she must at least show that the amendment would survive a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), *Coney Island*, 103 F.Supp.2d at 657 n. 8. Accordingly, the proposed amendment must be viewed in the light most favorable to the party moving to amend (here the Plaintiff) and leave to amend should only be denied if the moving party can prove no set of facts which would entitled her to relief. *Bank of New York v. Sasson*, 786 F.Supp. 349, 352 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985)).[2]

■ Defendant asserts that the motion for leave to amend should be denied because of Plaintiff's delay, as this case was originally filed in December 2001. Several months of the delay may be explained by Magistrate Judge Go's request in April 2003 that Plaintiff withdraw its original motion for certification of a class action pending this Court's decision on the motion to amend. Defendant cites several cases in which leave to amend was denied for reason of delay, including *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990); *Woolcott v. E.I. Dupont DeNemours & Co., Inc.*, 1996 WL 685735, at *1 (W.D.N.Y. November 25, 1996); *Phoenix Racing, Ltd. v. Lebanon Valley Auto Racing*, 53 F.Supp.2d 199, 209 (N.D.N.Y.); *Archie v. Grand Cent. Partnership, Inc.*, 997 F.Supp.

504, 536 (S.D.N.Y.1998); *Sala v. Gates Constr. Co.*, 155 F.R.D. 414, 415 (E.D.N.Y. 1994). In all of these cases, however, discovery had closed and the moving parties were seeking to add new claims or defenses to their complaints. Here, although over twenty-one months has elapsed since Plaintiff filed this lawsuit, discovery has not yet begun and no trial date is set. Furthermore, Plaintiff does not seek to add a new cause of action, but to add a class of plaintiffs on a claim already in the complaint. *See Bertrand v. Sava*, 535 F.Supp. 1020, 1023 (S.D.N.Y. 1982), *rev'd on other grounds by* 684 F.2d 204 (2d Cir.1982), (holding that there was no prejudice to defendants when plaintiff sought to amend to include a class action because the class action would present the defendant with the same issues involved in the original lawsuit). For these reasons, Defendant will not be significantly prejudiced if Plaintiff is allowed to amend her complaint at this time.

To determine whether Presser's proposed amendment is futile, it is necessary to evaluate the likelihood that her proposed class will be certified pursuant to Fed.R.Civ.P. 23(c).[3] *See Bertrand*, 535 F.Supp. at 1023 ("Transforming an individual action into a class action does not, in and of itself, create the type of prejudice sufficient to deny a motion to amend"). If Plaintiff's proposed class cannot be certified, leave to amend should be denied. *Feldman v. Lifton*, 64 F.R.D. 539, 543 (S.D.N.Y.1974) (holding that plaintiff's motion to amend the complaint to redefine the class should be denied because plaintiff could not meet numerosity or adequacy of representation requirements of Fed.R.Civ.P. 23(a)).

---

**2.** Defendant argues that amendment should be denied, citing *Keweenaw Bay Indian Community v. State*, 11 F.3d 1341, 1348 (6th Cir.1993), because Plaintiff includes in her amended complaint the claims that were dismissed by this Court on December 2, 2002. The court in *Keweenaw Bay* denied an amendment because there was "no material difference" between the original complaint, which had been dismissed, and the amended complaint. *Id.; See also Spira v. Curtin*, 2001 WL 611386, at *4 (S.D.N.Y. June 5, 2001) (denying motion to amend where movant failed to correct any of the deficiencies in the first complaint after clear direction by the court). Here, there is a material difference between Plaintiff's two complaints, namely, the addition of a class action. Although Plaintiff was careless

in including the dismissed claims in its amended complaint, this alone does not warrant denial of the motion to amend.

**3.** Defendant maintains that Plaintiff's amendment would be futile because she lacks *standing* to contest the validity of other employees' releases. The requirements of Fed.R.Civ.P. 23, however, replace the traditional standing analysis with regard to absent class members. "[W]hen a class plaintiff shows individual standing, the court should pass to Rule 23 criteria to determine whether, and to what extent, the plaintiff may serve in a representative capacity on behalf of the class." *Newberg on Class Actions* § 2.9.

Nevertheless, the court may limit its inquiry into the class action requirements at the amendment stage when certification will occur at a later time. Where, as here, the defendant's opposition to the amendment involves not-yet-certified classes, allowing the amendment is appropriate and defendant's arguments against certification are "more appropriately addressed in the context of motions to certify the proposed classes." *Academy of Ambulatory Foot Surgery (AAFS) v. American Podiatry Ass'n*, 516 F.Supp. 378, 383 (S.D.N.Y.1981) (granting plaintiff leave to amend complaint to include defendant class and to contract plaintiff class).

In order to succeed in certifying her proposed class action, Plaintiff must satisfy the four pre-requisites of Fed.R.Civ.P. 23(a):

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiff must also satisfy Fed.R.Civ.P. 23(b)(3), which requires that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[4]

Presser seeks to amend her complaint to include two sub-classes—one of Key Food employees who did not sign releases ("non-signer class") and another of employees who signed releases that they now seek to void ("signer class"). Viewing the amendment in the light most favorable to Plaintiff, the non-signer class can satisfy the requirements of Fed.R.Civ.P. 23(a), while the signer class cannot.

### The Non–Signer Class

A class may be certified only if it is so numerous that joinder of all members is impracticable. Fed.R.Civ.P. 23(a)(1); *Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield*, 938 F.Supp. 1131, 1140 (E.D.N.Y.1996) (holding that the party seeking certification need not show the exact number of potential class members). Without providing any estimates of how many employees have been laid off, Defendant asserts that it would be futile to certify a proposed class that "is likely to be no larger than 53 individuals and probably far smaller." (Def. Mem. at 6, n. 7.) In *Silberblatt*, 608 F.2d at 42–43, The Second Circuit held that "where the alleged futility of the amendment rests on findings of fact we prefer to let the district court resolve the factual issues . . . . [in a] motion for summary judgment." At the amendment stage we take as true Plaintiff's assertion that there are numerous current and former employees of Key Food affected by WARN Act violations, some of whom did not sign releases. It is not clear at this point exactly how many would be included in the non-signer class and, therefore, the question of whether joinder of these parties would be impracticable is better answered at the certification stage.[5]

---

4. Plaintiff incorrectly asserts that her proposed class can be certified as a either a 23(b)(1) or a 23(b)(2) class. Rule 23(b)(1) classes are intended for cases where "individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999). Plaintiff argues that absent class members will be prejudiced because the impending statute of limitations will preclude them from litigating their WARN Act claims. A statute of limitations deadline, however, does not rise to the level of prejudice required by the rule, lest plaintiffs have an incentive to delay commencement of an action until the statute of limitations is near expiration. *See Rodriguez v. Family Publications Service, Inc.*, 57 F.R.D. 189, 193 (C.D.Cal.1972).

A Rule 23(b)(2) class action is available only when the class seeks "final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Because Presser does not seek any injunctive or declaratory relief in conjunction with her WARN Act claim, certification under this subsection is inappropriate.

5. This is not to say that Plaintiff may make representations that are not "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b)(3). If it appears that there is no likelihood of evidentiary support for Plaintiff's contention that there are 300 to 400 potential class members, Plaintiff may be subject to a motion for sanctions, provided she is given adequate opportunity to correct the allegation pursuant to Fed. R.Civ.P. 11(c)(1)(A).

*See AAFS*, 516 F.Supp. at 383; *Roe v. Abortion Abolition Soc.*, 811 F.2d 931, 937 (5th Cir.1987) (holding that trial court failed to give the amended class complaint a sufficiently liberal reading and remanding denial of certification).

Plaintiff must also show that the claims of the class members share common questions of law or fact and that her claim is typical of the class. Fed.R.Civ.P. 23(a)(1), (2); *D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451, 456 (E.D.N.Y.1996) (holding that Rule 23 does not require that all questions of law or fact raised be common). Here, there are several common questions of law and fact likely to arise among the non-signer class, specifically whether Key Food gave notice of layoffs as required by the WARN Act, 29 U.S.C. § 2102. Furthermore, "each class member's claim arises from the same course of events and each class member [will make] similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993).

In addition to commonality and typicality, Plaintiff must show that "class counsel [is] qualified, experienced and generally able to conduct the litigation ... [and] class members [do] not have interests that are antagonistic to one another." *D'Alauro*, 168 F.R.D. at 457 (internal citations omitted). Defendant does not contend that Plaintiff's counsel is unqualified to represent the proposed class. As for Presser, her interest in showing that Key Food did not provide sufficient WARN Act notice is "co-extensive" with the interests of the members of the non-signer class challenging the notice. *Greeley v. K.L.M. Royal Dutch Airlines*, 85 F.R.D. 697, 700 (S.D.N.Y.1980).

Within this class it is unlikely that individual issues will predominate. *See* Fed.R.Civ.P. 23(b)(3); *Ciarlante v. Brown & Williamson Tobacco Corp.*, 1995 WL 764579, at *2 (E.D.Pa. December 18, 1995) (certifying in WARN Act case a class of employees who did not sign releases of their claims while denying certification to a class of employees who did sign releases). At this time it is too early to determine whether a class action is superior to other methods for the adjudication of this controversy. *See* Fed.R.Civ.P.

23(b)(3). Nevertheless, we view the proposed amendment in the light most favorable to the Plaintiff, keeping in mind that Plaintiff must satisfy all of the Fed.R.Civ.P. 23(a) requirements at the class certification stage. Leave to amend is granted to include a class of non-releasor employees who received ineffective WARN Act notice over the three year period prior to Plaintiff instituting suit as part of Defendant's plant closing and/or mass layoff. Plaintiff must still move for certification of this class pursuant to Fed.R.Civ.P. 23(c).

### The Signer Class

■ Plaintiff has likely demonstrated that there are enough potential members of the signer class to satisfy the numerosity requirement of Fed.R.Civ.P. 23(a)(1). The remaining three requirements under Rule 23(a)—commonality, typicality, and adequacy of representation—tend to merge into a larger question of whether maintenance of a class action is "economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 158 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Plaintiff can prove no set of facts that would satisfy these requirements.

Although Defendant does not contend that the proposed class counsel is unqualified to conduct the litigation, it does assert that Presser would not be an adequate class representative because most or all of the employees laid off by Key Food waived their rights to sue Key Food by signing releases. A similar situation is found in *Greeley*, 85 F.R.D. at 700, in which the plaintiff moved to certify a class of airline passengers whose luggage was lost or damaged, including passengers who settled with the airline. The district court found that the named plaintiff, who had not settled, could not adequately represent the interests of the rest of the class:

Having refused to settle, plaintiff has no personal reason to be concerned with the means by which [the defendant] induced settlements from others and therefore has

no real interest in proving those settlements were wrongfully obtained. Thus his interest is not coextensive with the interests of the class members who settled, and his claim is not typical of those of the class. *Id.* at 701. Like the plaintiff in *Greeley,* Presser cannot adequately represent the interests of those proposed class members who signed releases of their claims against Key Food. Although their interests are not directly opposed, Presser has no incentive to prove that the releases are void—an issue that must be litigated by this class before the WARN Act claim can be addressed.

Furthermore, even if Plaintiff can meet the 23(a) requirements, she cannot show that common questions will predominate over individual issues of waiver. *See* Fed.R.Civ.P. 23(b)(3). In *Ciarlante,* 1995 WL 764579 at *2, the district court granted certification of a class of employees who did not sign releases of their WARN Act claims. As for the proposed class of employees who signed releases, the court found it unable to satisfy the requirements of Fed.R.Civ.P. 23(b)(3):

> [T]he threshold issue of whether those releases should be declared invalid or rescinded would assume major importance. That issue is ill-suited to class treatment, since the state of mind of each individual signer would presumably need to be explored. Moreover, it is not at all clear that most, or even a substantial number, of the release-signers would wish to attack their releases and pursue WARN–Act claims. In my view, persons wishing to set aside the releases and pursue WARN–Act claims should do so on an individual basis, with full awareness of the potential risks involved.

*Id.* As in *Ciarlante,* Key Food employees who signed releases and wish to challenge them to assert WARN Act claims will have to litigate the issue of the validity of the release.[6] It would be futile to allow Plaintiff leave to amend her complaint to include a

class of signers because such a class cannot be certified under Fed.R.Civ.P. 23.

## CONCLUSION

For all of the above reasons, Plaintiff's motion for leave to amend the complaint to include a class of present and former Key Food employees who received ineffective WARN Act notice over the three year period prior to Plaintiff instituting suit as part of Defendant's plant closing and/or mass layoff and who did not sign releases of their WARN Act claims is granted. Plaintiff's motion for leave to amend the complaint to include a class of present and former Key Food employees who signed releases is denied.

SO ORDERED.

---

**6.** It is unlikely that any employees will even fall into this category. WARN Act damages award back pay for each day of the employer's violation, up to sixty days decreased by any voluntary and unconditional payment. 29 U.S.C. § 2404. Presser's release letter offered her the equivalent of ten weeks' (seventy days') salary. If Key Food offered other signer-employees the same proportion of their salaries, the signers would be worse off with WARN Act damages than with the severance payments.