**Shaun B. CASHMAN, Connecticut Dept. of Labor, City of Hartford, Eddie A. Perez & Delia A. Lee, Plaintiffs,**

v.

**DOLCE INTERNATIONAL/HARTFORD, INC. & OLY/Hfd Hotel, LP, Defendants.**

**No. 3:04CV106(MRK).**

United States District Court, D. Connecticut.

Dec. 7, 2004.

Richard T. Sponzo, Attorney General's Office Labor Relations, Denise E. Aguilera, Corporation Counsel's Office, Hartford, CT, for Plaintiff.

Margaret J. Strange, Jackson Lewis, Hartford, CT, E. Michelle Bohreer, Boyar & Miller, Houston, TX, Richard P. Weinstein, Weinstein & Wisser, P.C., West Hartford, CT, for Defendant.

### MEMORANDUM OF DECISION

KRAVITZ, District Judge.

Plaintiffs Connecticut Department of Labor and its Commissioner Shaun B. Cashman (collectively, the "State Plaintiffs"), Plaintiffs City of Hartford and its Mayor Eddie A. Perez (collectively, the "City Plaintiffs"), and Plaintiff Delia A. Lee bring this action against Dolce International/Hartford, Inc. ("Dolce") and OLY/Hfd Hotel, LP ("OLY"). The lawsuit arises from the Defendant OLY's bankruptcy and Defendant Dolce's subsequent layoff of its entire workforce at the Hastings Hotel and Conference Center in Hartford in December 2003. Plaintiffs claim that Defendants' actions violated the Worker Adjustment and Retraining Notification Act (WARN Act), 29 U.S.C. § 2101 *et seq.*

Defendants have moved to dismiss this action, claiming that the State Plaintiffs lack standing to bring an action under the WARN Act and that Dolce was not an "employer" subject to the requirements of the Act. Plaintiffs have moved to certify a class consisting of the State Plaintiffs, the City Plaintiffs, Plaintiff Lee, and approximately 117 former

employees of Dolce, with the State Plaintiffs, the City Plaintiffs, and/or Plaintiff Lee as representative plaintiffs for the proposed class. For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss [doc. # 20] and Defendants' Revised Motion to Dismiss [doc. # 46]; DENIES the State and City Plaintiffs' Motion for Class Certification [doc. # 31]; and GRANTS IN PART and DENIES IN PART Plaintiff Lee's Motion for Class Certification [doc. # 62].

## I.

The Court recognizes that on a motion to dismiss it must accept as true all of the factual allegations contained in the Amended Complaint [doc. # 36] and the exhibits attached to it, and must draw all reasonable inferences in favor of Plaintiffs. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002) (stating that, on a motion to dismiss, the Court is "generally limited to the facts presented within the four corners of the complaint, to documents attached to the complaint, or documents incorporated within the complaint by reference"). That said, the underlying facts in this case are not in serious dispute.

Defendant OLY owned the Hastings Hotel & Conference Center ("Hotel & Conference Center") in Hartford, Connecticut. Defendant Dolce managed the Hotel & Conference Center, but did not own it. *See* Amended Complaint ¶¶ 6–7 [doc. # 36]. On or about December 30, 2003, OLY informed Dolce of OLY's likely bankruptcy filing and of its intention to close the Hotel & Conference Center. *Id.* at ¶ 7. On December 30, 2003, Dolce gave written notice to the rapid response unit of the Connecticut Department of Labor, to Mayor Perez, and to 117 Dolce employees including Ms. Lee, advising them of the impending bankruptcy of the hotel owners and of the permanent layoff of all Dolce employees at the Hotel & Conference Center, effective December 30, 2003. *Id.* at ¶ 12 & Ex. A & B. The notice, which is attached to the Amended Complaint as Exhibit A, stated that it was "provided pursuant to [the WARN Act], which requires employers to give to employees who will lose their jobs in certain layoffs or workplace closings." *Id.* at Ex. A.

Plaintiffs allege that Defendants violated the notice provisions of the WARN Act by failing to provide the Connecticut Department of Labor, the City of Hartford, and the Hotel & Conference Center's employees with 60 days advance written notice of their termination. In their motion to dismiss, Defendants assert that the State Plaintiffs have no standing to sue under the WARN Act and that Defendant Dolce does not constitute an "employer" under the Act. In their motions for class certification, Plaintiffs argue that this action should be certified as a class action under Rule 23 of the *Federal Rules of Civil Procedure*.

## II.

The WARN Act prohibits employers of 100 or more employees from ordering "a plant closing or mass layoff until the end of a 60–day period after the employer serves written notice of such an order." 29 U.S.C. § 2102(a).[1] Employers are supposed to give the required written notice to the following: to each representative of affected employees as of the time of the notice or, if there is no such representative, to each affected employee; to the State or entity designated by the State to carry out rapid response activities; and to the chief elected official of the local governmental unit within which such closing

---

1. The WARN Act defines a "plant closing" as the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30–day period for 50 or more employees excluding any part-time employees. 29 U.S.C. § 2101(a)(2). A "mass layoff" is defined as a reduction in force which—(A) is not the result of a plant closing; and (B) results in an employment loss at the single site of employment during any 30–day period for—(i)(I) at least 33 percent of the employees (excluding any part-time employees); and (II) at least 50 employees (excluding any part-time employees); or (ii) at least 500 employees (excluding any part-time employees). 29 U.S.C. § 2101(a)(3).

or layoff is to occur. 29 U.S.C. § 2102(a)(1)-(2).

Failure to provide a WARN Act notice subjects an employer to potential civil liability and civil penalties. Employers are potentially liable to each aggrieved employee (who suffers an employment loss as a result of the closing or layoff) for back pay and for benefits under an employee benefit plan (including the costs of medical expenses incurred during the employment loss), all calculated for the period of violation of the WARN Act up to a maximum of 60 days. *See* 29 U.S.C. § 2104(a)(1). An employer who violates the notice provisions "with respect to a unit of local government" is also "subject to a civil penalty of not more than $500 for each day of such violation." 29 U.S.C. § 2104(a)(3). *See generally North Star Steel Co. v. Thomas,* 515 U.S. 29, 31–32, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995). These specific monetary remedies are the exclusive remedies for violating the WARN Act; no other remedies are possible. *See* 29 U.S.C. § 2104(b) ("The remedies provided for in this section shall be the exclusive remedies for any violation of this chapter."). In particular, the Act states that "a Federal court shall not have authority to enjoin a plant closing or mass layoff." *Id.*

### A.

The principal issue raised by Defendants' motion to dismiss requires the Court to decide who can sue to enforce the provisions of the WARN Act; that is, who has standing to enforce the WARN Act. Section 2104(a)(5) of the Act provides as follows:

> A person seeking to enforce such liability, including a representative of employees or a unit of local government aggrieved under [§ 2104(a)(1) or § 2104(a)(3) ], may sue either for such person or for other persons similarly situated, or both, in any district court of the United States for any district in which the violation is alleged to have occurred, or in which the employer transacts business.

29 U.S.C. § 2104(a)(5).

There is no dispute that "[a]ggrieved employees"[2] such as Ms. Lee have standing to sue under the WARN Act because they are "person[s] seeking to enforce" the liability provisions in § 2104(a)(1) of the Act to recover back pay and benefits for the time period when notice of an impending layoff or termination was owed, but not given. *See, e.g., North Star Steel,* 515 U.S. at 31, 115 S.Ct. 1927 ("An employer who violates the notice provisions is liable for penalties by way of a civil action.... The class of plaintiffs includes aggrieved employees."). Similarly, there is no question that aggrieved "unit[s] of local government" such as the City Plaintiffs have standing to enforce the liability provisions in § 2104(a)(3) of the Act, which permit recovery of civil penalties of $500 per day of missed notice. Furthermore, the Supreme Court has held that § 2104(a)(5)'s express reference to "a representative of employees" specifically abrogated otherwise applicable associational standing limitations and manifested Congress' intention to grant unions standing to sue on behalf of their members for damages to which the members are entitled under § 2104(a)(1). *See United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 546, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996).

The question posed in this case is whether Congress also granted the State Labor Department and its Commissioner standing to sue the Defendants under the WARN Act. Examining the language, structure, and legislative history (or lack thereof) of the WARN Act, the Court concludes that Congress did not confer standing on the State Plaintiffs to sue to enforce the WARN Act.[3]

29 U.S.C. § 2104(a)(7).

**2.** An "aggrieved employee" is defined by the statute as an

> employee who has worked for the employer ordering the plant closing or mass layoff and who, as a result of the failure by the employer to comply with section 2102 of this title, did not receive timely notice either directly or through his or her representative as required by section 2102 of this title.

**3.** This is not the first time that the State Plaintiffs sought to sue under the WARN Act and were held to lack standing. *See Blumenthal v. Walker Digital Corp.,* No. 3:01cv53(PCD), (D.Conn. Aug. 21, 2001) (denying state plaintiffs standing in a WARN Act case), *aff'd on reh'g,* 2002 WL 32173570 (D.Conn. Feb.28, 2002).

■ **1. The Statutory Language.** When examining a statute, courts must begin—and often must end—with the language of the statute itself. *See Leocal v. Ashcroft,* —— U.S. ——, ——, 125 S.Ct. 377, 382, 160 L.Ed.2d 271 (2004) ("Our analysis begins with the language of the statute."); *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) ("As in any case of statutory construction, our analysis begins with 'the language of the statute.' And where the statutory language provides a clear answer, it ends there as well.") (quoting *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992)); *United States v. Gayle,* 342 F.3d 89, 92 (2d Cir.2003) ("Statutory construction begins with the plain text and, if that text is unambiguous, it usually ends there as well.").

On its face, the text of § 2104(a)(5) grants standing to "person[s]" and explicitly defines the term "person" to include a "representative of employees or a unit of local government." Therefore, the clear, unambiguous and plain text of the WARN Act contemplates three—and only three—categories of plaintiffs who have standing to enforce the WARN Act: "persons," "representatives of employees," and "units of local government."

The State Plaintiffs do not argue that a State should be considered a "unit of local government" under the WARN Act. And for good reason, since the Act explicitly defines a "unit of local government" as "any general purpose *political subdivision of a State* which has the power to levy taxes and spend funds, as well as general corporate and police powers." 29 U.S.C. § 2101(a)(7) (emphasis added). A state cannot be a political subdivision of itself, and the State Plaintiffs do not contend otherwise.

■ The State Plaintiffs also cannot argue that they are a "representative of employees," because that phrase is specifically defined by the WARN Act as "an exclusive representative of employees within the meaning of section 159(a) or 158(f) of this title [the National Labor Relations Act] or section 152 of Title 45 [the Railway Labor Act]." 29 U.S.C. § 2101(a)(4). Because the WARN Act limits the term "representative of employees" to its most common (and common sense) usage in the employment context—namely labor unions—the State Plaintiffs cannot be considered "a representative of employees" under the Act. Once again, the State Plaintiffs do not contend otherwise, and the State Plaintiffs explicitly represented to the Court at oral argument that they were suing directly under § 2104(a)(5) in their own right and not as *parens patriae* on behalf of the employees.[4]

■ Finally, all parties would agree that the term "person" most naturally refers to laid-off employees like Ms. Lee, who claim to have been injured as a result of a failure by the employer to comply with the WARN Act. Indeed, there can be no dispute that the primary purpose of the WARN Act as a whole is to protect workers, and the primary purpose of § 2104(a)(5) in particular is to penalize employers who fail to comply with the Act and ensure that aggrieved employees are able to recover back pay and benefits. *See, e.g., Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1159 (9th Cir. 2001) ("[T]he primary purpose of the Act is remedial.... Congress was clearly concerned with ensuring an income stream, or, in the words of the governing regulation, with 'provid[ing] protection to workers, their families and communities.'") (quoting 20 C.F.R. § 639.1(a)); *Burns v. Stone Forest Industries, Inc.,* 147 F.3d 1182, 1184 (9th Cir.1998) ("The statute is a wage workers' equivalent of business interruption insurance. It protects a worker from being told on payday that the plant is closing that afternoon and his stream of income is shut off,

4. The doctrine of *parens patriae* "allows states to bring suit on behalf of their citizens in certain circumstances by asserting a 'quasi-sovereign interest' ... [and] derives from the common law principle that a sovereign, as 'parent of the country,' may step in on behalf of its citizens to prevent 'injury to those who cannot protect themselves.'" *Connecticut v. Physicians Health Services of Connecticut,* 287 F.3d 110, 119 (2d Cir.2002) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,* 458 U.S. 592, 601 & 600, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982)) (internal citation omitted). The Court need not to decide—and therefore expresses no opinion on—whether the State Plaintiffs could establish standing as *parens patriae.*

though he has to buy groceries for his family that weekend and make a mortgage payment the next week."); *see also* 20 C.F.R. § 639.1(a) ("Purpose of WARN. The [WARN Act] provides protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market."). Nevertheless, in their quest to obtain standing to enforce the WARN Act, the State Plaintiffs seek to shoe-horn themselves into the term "person," a word that simply does not fit them.

■ To begin with, the text of the WARN Act must be read and interpreted in the context of the general presumption that when Congress uses the term "person" in a federal statute, it does not intend to include a sovereign such as the State of Connecticut, unless there is good reason to believe otherwise. Numerous courts have recognized that "[i]t is a longstanding interpretive presumption that 'person' does not include the sovereign." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 780, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000); *see, e.g., Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("[I]n common usage, the term 'person' does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude it."); *United States v. United Mine Workers*, 330 U.S. 258, 275, 67 S.Ct. 677, 91 L.Ed. 884 (1947) ("In common usage, that term [person] does not include the sovereign, and statutes employing it will ordinarily not be construed to do so."); *United States v. Errol D., Jr.*, 292 F.3d 1159, 1163 (9th Cir.2002) ("[A]lthough it is possible that Congress intended 'person' to be construed broadly ... such speculation cannot by itself suffice to overcome this longstanding presumption."); *United States ex rel. Long v. SCS Business & Technical Institute, Inc.*, 173 F.3d 870, 874 (D.C.Cir.1999) ("[I]f the... rule has any

meaning at all, it must create at minimum a default rule; states are excluded from the term person absent an affirmative contrary showing."); *United States v. Streater*, No. 3:97CR232 (EBB), 1999 WL 66534, at *2 (D.Conn. Jan.19, 1999) ("It is a canon of statutory construction that the general words of a statute do not include the government ... unless the text of the statute expressly includes the government."); *see also* 1 U.S.C. § 1 (default definition of "person" in the Dictionary Act does not include the government). *Cf. United States v. Ekanem*, 383 F.3d 40, 43 (2d Cir.2004) (concluding from the context of the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A, that the term "victim" is not "limited by the default definition of 'person' in the Dictionary Act but instead includes the Government.").

Ordinarily, therefore, when Congress decides to include states within the term "person," Congress does so explicitly and clearly. A small sampling from varied sections of the United States Code will suffice to make the point. *See, e.g.,* Lobbying Disclosure Act of 1995, 2 U.S.C. § 1602(14) ("The term 'person or entity' means any individual, corporation, company, ... or State or local government."); Weather Modification Reporting Act of 1972, 15 U.S.C. § 330(2) ("The term 'person' means any individual, corporation, company, ... any State or local government or any agency thereof ... who is performing weather modification activities."); Marine Mammal Protection Act of 1972, 16 U.S.C. § 1362(10) ("The term 'person' includes (A) any private person or entity, and (B) any officer, employee, agent, department, or instrumentality of the Federal Government, of any State or political subdivision thereof, or of any foreign government."); Pro–Children Act of 1994, 20 U.S.C. § 6082(3) ("The term 'person' means any State or local subdivision thereof, agency of such State or subdivision ...."); Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6903(15) ("The term 'person' means an individual, trust, firm, ... State, municipality, commission, political subdivision of a State, or any interstate body.").

By contrast to the foregoing statutes, the WARN Act does not define the word "per-

son" to include states. The WARN Act is silent on this crucial issue, a silence that the Court finds telling, since it reinforces the interpretive presumption that when, as here, Congress uses the term "person" without more, Congress does not intend to include within the term sovereign entities such as the State Plaintiffs.

In the teeth of this longstanding interpretive presumption, the State Plaintiffs trot out a multitude of arguments to convince the Court that the Congress deliberately chose the word "person" in § 2104(a)(5) as an expression of its intent to grant the State Plaintiffs standing. As an aside, the Court notes that were it to adopt the State Plaintiffs' expansive interpretation of the word "person" in the WARN Act—which the Court most certainly will not—such a holding would have the potential to initiate more mischief than the State Plaintiffs should truly desire, considering the many instances where the State unquestionably benefits from not being considered to be a "person" under federal law. *See, e.g., Will*, 491 U.S. at 71, 109 S.Ct. 2304 (states are not persons subject to suit under Section 1983); *Moor v. Alameda County*, 411 U.S. 693, 717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) ("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction."). In any event, the State Plaintiffs' complex—and often convoluted—arguments fail to overcome the high hurdle that the plain language of the statute and the interpretative presumption sets before them.

In their brief in opposition to the motion to dismiss [doc. # 40], the State Plaintiffs argue that because Congress has authorized governmental entities to bring representative actions on behalf of employees in other labor laws, the Court should conclude that Congress also intended to give the State Plaintiffs standing to sue to enforce the WARN Act. *See* Pls.' Mem. of Law in Opp'n to Mot. to Dismiss, at 27–28 [doc. # 40]. In support of this argument, the State Plaintiffs cite the following statutes: the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 216(b)-(c) ("The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor.... The Secretary may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages."); the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a) ("A civil action may be brought ... by the Secretary ... by the State ..."); the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2617(b)(2) ("The Secretary may bring an action in any court of competent jurisdiction to recover .... damages"); the Employee Polygraph Protection Act, 29 U.S.C. § 2005(b) ("The Secretary may bring an action under this section to restrain violations of this chapter."); the Occupational Safety and Health Act (OSHA), 29 U.S.C. § 660(b) ("The Secretary may also obtain review or enforcement of any final order ... by filing a petition for such relief in the United States court of appeals for the circuit in which the alleged violation occurred or in which the employer has its principal office."); the National Labor Relations Act (NLRA), 29 U.S.C. § 160(e) ("The Board shall have power to petition any court of appeals of the United States, or if all the courts of appeals to which application may be made are in vacation, any district court of the United States, within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business."); the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626(c)(1) ("Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: Provided, That the right of any person to bring such action shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter."); and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–5(f)(1)("[T]he Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency,

or political subdivision, ... the Attorney General ... may bring a civil action against such respondent in the appropriate United States district court.").

Frankly, the Court finds this argument baffling, for far from supporting the State Plaintiffs' claim of standing, these above-noted statutes undermine it. Each of the statutes cited clearly and unambiguously grants the governmental authorities (for example, the Secretary of the Department of Labor, the National Labor Relations Board, the Equal Employment Opportunity Commission, or the Attorney General, depending on the statute) the right to sue employers on behalf of aggrieved employees. The WARN Act, by contrast, does no such thing, even though—as the State Plaintiffs' argument unwittingly makes clear—Congress apparently knows full well how to draft statutes that explicitly authorize governmental entities to sue on behalf of aggrieved employees. The WARN Act's silence regarding the State Plaintiffs' standing to sue is thus ever more deafening in light of the other labor statutes in which Congress explicitly authorized governmental authorities to sue on behalf of employees.

The State Plaintiffs also make much of the fact that the drafters of the WARN Act could have used the term "employee" instead of "person" in § 2104(a)(5). *See* Pls.' Mem. of Law in Opp'n to Mot. to Dismiss, at 5–9 [doc. # 40]. They point out that the term "person" is not defined in the Act and is only used in § 2104(a)(5), whereas the term "employee" is defined in § 2104(a)(7) and is used throughout the WARN Act. *See id.* The State Plaintiffs contend that Congress's conscious choice to use the term "person" instead of "employee" in § 2104(a)(5) implies that Congress did not intend to limit standing to sue to aggrieved employees. *See id.*

■ This argument does nothing to advance the State Plaintiffs' cause since it does nothing to rebut the presumption that when Congress uses the word "person" in a federal statute, the term does not include states. Of course, Congress did not intend to limit standing to aggrieved employees alone; § 2104(a)(5) expressly recites that the term "person" also includes a "representative of employees or a unit of local government." Therefore, while use of the word "person" in the WARN Act does indeed suggest that Congress had in mind that the Act would be enforced by others beyond aggrieved employees, that does not mean that Congress also contemplated that those "others" would include states. And in light of the long series of cases establishing the presumption that "person" does not include states, this Court may presume that Congress knew that to include states within meaning of the term "person," Congress would have to say so expressly. *See NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 524, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) ("Congress is presumed to be aware of judicial interpretations of a statute."); *Siebert v. Conservative Party of New York State,* 724 F.2d 334, 337 (2d Cir. 1983) (It is a "canon of statutory construction that Congress is presumed to be aware of the judicial background against which it legislates."). Notably, Congress did not.

■ In fact, by explicitly *including* unions and local governments within the scope of the term "person," Congress can be deemed to have *excluded* all others not expressly mentioned, such as the State Plaintiffs. *See, e.g., United States v. Vonn,* 535 U.S. 55, 65, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002) ("[E]xpressing one item of [an] associated group or series excludes another left unmentioned."). That is because "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.... This principle of statutory construction reflects an ancient maxim—*expressio unius est exclusio alterius." National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974); *see also Hardy v. New York City Health & Hosp. Corp.,* 164 F.3d 789, 794 (2d Cir.1999) ("When Congress expressly defines a statute's preemptive reach, and the definition provides a reliable indicium of congressional intent as to what should be left to state authority, there is a reasonable inference that Congress did not intend to preempt matters beyond that reach. This is based on the familiar principle of *expressio unius est exclusio alterius,* the

mention of one thing implies the exclusion of the other.") (internal quotations omitted). Though the *expressio unius* "maxim is not always a reliable guide," in certain circumstances it can be "persuasive evidence" of Congressional intent, or at the very least support other similar evidence of Congressional intent. *United States v. Mango,* 199 F.3d 85, 90 (2d Cir.1999); *see also Hardy,* 164 F.3d at 794; *Association of Intern. Auto. Mfrs., Inc. v. Abrams,* 84 F.3d 602, 607 (2d Cir.1996) (application of the interpretive principle of *expressio unius est exclusio alterius* may help reveal Congress's intent). And while it is certainly true that "not every silence is pregnant," in this case the Court believes that Congress's silence is pregnant because of the long-standing interpretive guide previously discussed. *United States v. City of New York,* 359 F.3d 83, 98 (2d Cir. 2004).

The State Plaintiffs respond by focusing on Congress's use of the word "including" before the phrase "representative of employees or a unit of local government" in § 2104(a)(5) and by suggesting that unions and local governments are therefore only "illustrative" of those entities entitled to bring suit under the WARN Act. Pls.' Mem. of Law in Opp'n to Mot. to Dismiss, at 10 [doc. # 40] (quoting *Federal Land Bank of St. Paul v. Bismarck Lumber Co.,* 314 U.S. 95, 100, 62 S.Ct. 1, 86 L.Ed. 65 (1941)); *see also P.C. Pfeiffer Co. v. Ford,* 444 U.S. 69, 77 n. 7, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979) ("including" means the enumerated items are part of a larger group). Once again, however, this argument founders when faced with the strong presumption against including sovereigns within the scope of the term "person." For even if union representatives and units of local government are only two examples of a much larger group of parties who fall within the scope of the term "person," to overcome the interpretative principle against including states within the meaning of that term, Congress would have to have done something to make its intention to include states clear. Yet, there is nothing to suggest that Congress intended such a result. Therefore, one can accept *arguendo* that the term "person" may not be limited to aggrieved employees, unions and local governments without also

accepting the State Plaintiffs' claim that the term must also include states.

Furthermore, the word "including" need not always be used by Congress in an illustrative manner. The term can also be used and construed as restrictive and definitional. *See, e.g., Adams v. Dole,* 927 F.2d 771, 777 (4th Cir.1991) (the use of the term "including" to define "employer" in a portion of a broader statute specifically regulating the Nuclear Regulatory Commission (NRC) was "not meant to be illustrative, but rather definitional," thereby restricting the scope of the term "employer" to include the NRC and only those other entities specifically listed after the term "including"); *see also Random House Webster's Unabridged Dictionary* 967 (2d ed.2001) (the verb "include" defined as "to contain, as a whole does parts or any part or element"). Therefore, it is not unnatural at all to read § 2104(a)(5) and its use of the term "including" as defining the "persons" who have standing to sue under the WARN Act as including only aggrieved employees (the parties most naturally fitting within the scope of the term "person[s]"), unions (who represent those employees) and aggrieved local governmental units (who are entitled to penalties under the Act).

In this regard, the Court notes that the Department of Labor—Congress's designated expert on labor statutes—has also weighed in on the mechanics of WARN Act enforcement. The Department of Labor's regulation on "WARN enforcement" interprets the plain text of the Act in accord with this Court's interpretation, stating in relevant part:

> Enforcement of WARN will be through the courts, as provided in section 5 of the statute. *Employees, their representatives and units of local government may initiate civil actions against employers* believed to be in violation of § 3 of the Act. The Department of Labor has no legal standing in any enforcement action and, therefore, will not be in a position to issue advisory opinions of specific cases.

20 C.F.R. § 639.1(d) (emphasis added); *see* Worker Adjustment and Retraining Notification, 54 Fed.Reg. 16,042, 16,043 & 16,064

(Thursday, April 20, 1989). Thus, the Department of Labor has interpreted the WARN Act as granting only three parties standing to enforce the Act: employees, their union representatives, and local governments. The State Plaintiffs are noticeably absent from the Department of Labor's list.[5]

Finally, the only reported case law on the precise subject raised by the motion to dismiss also is consistent with the Court's decision.[6] In *Blumenthal v. Walker Digital Corp.*, No. 3:01cv53(PCD), (D.Conn. Aug. 21, 2001), *aff'd on reh'g*, 2002 WL 32173570 (D.Conn. Feb.28, 2002), Judge Peter Dorsey of this Court held that the plain text of the statute did not express a clear Congressional intent to confer standing on the State Plaintiffs. *Id.* at *2. This Judge agrees with Judge Dorsey.

In sum, the plain language of the WARN Act does not evidence any intent to include the State Plaintiffs within the meaning of the term "person" in § 2104(a)(5), and longstanding canons of statutory construction weigh heavily against any such interpretation.

■ **2. The Act's Structure.** The structure of a statute as a whole can aid in a court's interpretation of particular statutory language. *See Leocal,* —— U.S. at ——, 125 S.Ct. at 382 ("[W]e construe language in its context and in light of the terms surrounding

it."); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."); *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir.2003) ("The text's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute."); *Auburn Housing Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir.2002) ("The meaning of a particular section in a statute can be understood in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another. In other words, the preferred meaning of a statutory provision is one that is consonant with the rest of the statute.").

The Court finds that the structure of the WARN Act also supports the Court's reading of the statute's text. The basic structure of the WARN Act creates two exclusive financial remedies—back pay and benefits for former employees under § 2104(a)(1); and a $500 per day penalty for an affected unit of local government under § 2104(a)(3). These remedies run to aggrieved employees, directly or through their union representatives, see *United Food,* 517 U.S. at 550, 116 S.Ct. 1529,

5. The Court need not determine whether it must defer to (or what level of deference it should accord) the Department of Labor's interpretation of the WARN Act, because the Court finds that the text of the Act demonstrates Congress's clear intent not to confer standing on states. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."); *Kruse v. Wells Fargo Home Mortg., Inc.,* 383 F.3d 49, 58 (2d Cir.2004) ("[t]he circumstances under which an agency pronouncement is due mandatory, *Chevron* deference are not entirely clear."); *Community Health Center v. Wilson–Coker,* 311 F.3d 132, 138 (2d Cir.2002) (even if we are not *required* to defer to a permissible agency interpretation, we still *may* defer, based largely on a similar set of concerns: the agency's expertise, the care it took in reaching its conclusions, the formality with which it promulgates its interpretations, the consistency of its

views over time, and the ultimate persuasiveness of its arguments.") (emphasis in original). Suffice it to say that if the WARN Act were ambiguous on this point or if Congress left a gap in the statute to be filled by agency regulations, the Court would "defer to the interpretation [the Department of Labor] advances [because it is not] arbitrary, capricious, or manifestly contrary to the statute ... [and the Court would] give that reading controlling weight, even if it is not the answer the court would have reached if the question initially had arisen in a judicial proceeding." *Kruse,* 383 F.3d at 55 (internal quotations and citations omitted).

6. The Supreme Court has twice analyzed and interpreted § 2104(a)(5), and has twice stated that aggrieved employees and their union representatives have standing to sue under the WARN Act. *See United Food,* 517 U.S. at 548, 116 S.Ct. 1529; *North Star Steel Co.,* 515 U.S. at 31, 115 S.Ct. 1927. But the Supreme Court did not address the issue of whether states have standing as well.

and to local units of government. There are no remedies explicitly directed to states, even though states also receive WARN Act notice. Therefore, a logical and clear reading of the portion of the WARN Act that creates the WARN Act cause of action— § 2104(a)(5)— is that only those who can recover the exclusive financial remedies provided by the Act have standing to bring suit under the Act. *See generally* H.R. Conf. Rep. No. 100–576, at 1045, 1051–53 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2078, 2084–86 (discussing the mechanisms for employees and local government units to bring civil actions to enforce the exclusive statutory remedies—damages and penalties—and not mentioning remedies running to states or enforcement powers of states).

Units of local government have a direct connection to the $500 per day penalty for failure to provide notice under § 2104(a)(3). Aggrieved employees also have a direct connection to the back pay and benefits owed to employees for failure to provide adequate notice under § 2104(a)(1). Labor unions— the only representatives of the employees recognized by the WARN Act—also have a reasonable connection to or nexus with the back pay and benefits owed to their members, and are explicitly mentioned in the statute's standing provision § 2104(a)(5). States, however, have no clear connection or nexus with the statutory remedies provided by the WARN Act and they are not expressly mentioned in § 2104(a)(5). The Act is thus sensibly structured so that only those with the greatest incentives to bring a lawsuit—i.e., those with clear connections to the exclusive financial remedies provided by the statute—are empowered to enforce its terms.

Indeed, this case demonstrates why it is not necessary to stretch the language of the WARN Act to provide the State Plaintiffs with standing. For, as this lawsuit shows, there are plenty of ready, willing, and able plaintiffs—both the former employees as well as the City Plaintiffs—who have clear financial incentives to enforce the WARN Act and who can recover their attorneys' fees if they are successful in so doing. *See* 29 U.S.C. § 2104(6) ("In any such suit, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs."). There appears to be little risk that WARN Act violations will go unremedied if the State Plaintiffs are denied standing.

The State Plaintiffs counter that they should have standing to enforce the WARN Act because they must shoulder the majority of the financial burden resulting from laid-off employees having to receive unemployment compensation during the WARN Act's 60-day notice period. *See* Pls.' Mem. of Law in Opp'n to Mot. to Dismiss, at 15–20 [doc. # 40]. The State of Connecticut may well be adversely affected by mass layoffs and plant closures covered by the WARN Act. However, Congress did not provide the State with a remedy for violations of the Act. The only governments given a remedy under the Act are local governments, not states, and as stated above, the remedies under the WARN Act are exclusive. *See* 29 U.S.C. § 2104(b). This remedial scheme reflects Congress's policy choice to address the issue of mass layoffs and plant closures principally through notice, with certain financial remedies going to aggrieved employees and affected local government units and a complete bar on injunctive relief. The State Plaintiffs may not be happy with that policy choice. But it is one that this Court must respect until Congress says otherwise.

The State Plaintiffs also argue that anyone entitled to notice under the WARN Act should be entitled to sue under the Act, and since states are required to receive notice, they too should be able to sue employers who do not comply with the Act's notice provisions. In particular, the State Plaintiffs assert that they have standing to sue because they are entitled to WARN Act notice and therefore are "persons similarly situated" within the meaning of § 2104(a)(5). *See* Pls.' Mem. of Law in Opp'n to Mot. to Dismiss, at 10–12 [doc. # 40]. In support of that argument, the State Plaintiffs seize upon a single line in the Supreme Court decision in *United Food, supra,* in which the Supreme Court stated: "the statutory reference to persons 'similarly situated' [in § 2104(b) ] can very readily be understood to mean the class of persons to whom notice is owed but not given. In this respect the union and its

members are certainly persons 'similarly situated.'" 517 U.S. at 550, 116 S.Ct. 1529.

■ The Court is not persuaded. First, it is undisputed that the chief elected official of the unit of local government where the employer is located receives the same notice as the state, under precisely the same subpart of the WARN Act— § 2102(a)(2). Yet, local governments are specifically mentioned in § 2104(a)(5), while states are not.[7] Were the Court to adopt the State Plaintiffs' position that any party entitled to notice under the Act can sue to enforce it, the Act's specific mention of local governments in § 2104(a)(5) would be rendered unnecessary surplusage. However, when possible (and it certainly is here), courts should construe statutes to give effect to every word and should not interpret them so as to render language in the act meaningless or unnecessary. *See, e.g., Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) ("We are ... reluctant to treat statutory terms as surplusage in any setting.") (internal quotation and citation omitted); *California Public Employees' Retirement System v. WorldCom, Inc.*, 368 F.3d 86, 106 (2d Cir.2004) ("Statutes should be construed, if possible, to give effect to every clause and word.").

Second, the language in *United Food* was explicitly and narrowly applied to unions (which are expressly granted standing under § 2104(a)(5), unlike the State Plaintiffs). The State Plaintiffs' heavy reliance on a single sentence of *United Food*—taken out of the context in which it appears—does not

alter the straightforward reading of the statute's text as outlined above—namely that the act can be enforced only by those who have a connection to the remedies available under the Act. While Congress has required employers to give states notice so they can commence political or administrative responses to a plant closing or mass layoff, it does not logically follow that Congress intended to give states the right to bring suit to recover financial remedies that run to aggrieved employees or local governments and not to states.

Finally, the State Plaintiffs argue that since the WARN Act is a remedial statute, it should be interpreted liberally to grant standing to the State Plaintiffs. *See* Pls.' Mem. of Law in Opp'n to Mot. to Dismiss, at 13 [doc. # 40]. Once again, this argument does not help the State Plaintiffs. Assuming *arguendo* that the WARN Act can properly be characterized as a remedial statute,[8] the overall objective of the Act is to provide financial remedies to aggrieved employees and local governments who are harmed by sudden plant closings or mass layoffs. Therefore, any liberal reading of the statute should be done in furtherance of this specific objective and for the employees' and local governments' benefit, not for the State Plaintiffs who are granted no remedy under the statute. *See, e.g., Greene v. Long Island R. Co.*, 280 F.3d 224, 229 (2d Cir.2002) ("[The Federal Employers' Liability Act] ... is a broad remedial statute whose objective is to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer, and which

---

7. The State Plaintiffs make much of the fact that § 2102(a)(2) requires notice to the local "chief elected official of the unit of local government," while § 2104(a)(5) grants standing to the "unit of local government." Candidly, the Court has had difficulty understanding the State Plaintiffs' convoluted argument. If the Court has deciphered the State Plaintiffs' syllogism correctly, they argue that the term "person" was used in § 2104(a)(5) in order to cover a wide range of potential state plaintiffs, while the specific grant of standing to a unit of local government was used to narrow potential local government plaintiffs. *See* Pls.' Mem. of Law in Opp'n to Mot. to Dismiss, at 31–32 [doc. # 40]. The Court finds this argument contrary to the plain text of the WARN Act and not worthy of further comment.

8. *See generally Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1159 (9th Cir.2001) ("While some provisions of the Act are punitive in nature, the primary purpose of the Act is remedial."); *Carpenters District Council of New Orleans v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1284 n. 14 (5th Cir.1994) ("There are plausible reasons why Congress could choose not to include a provision that would make the WARN compensation provisions purely remedial, e.g., the desire to avoid placing a burden on a terminated employee to mitigate damages by taking any job offered, the desire to give a terminated employee a window of time to readjust without immediately having to search for a job, the desire for simplicity in the statutory scheme, etc.").

is to be liberally construed to achieve that objective.") (internal quotations and brackets omitted); *Commander Oil Corp. v. Barlo Equipment Corp.*, 215 F.3d 321, 327 (2d Cir. 2000) ("Because it is a remedial statute, [the Comprehensive Environmental Response, Compensation, and Liability Act] must be construed liberally to effectuate its two primary goals.") (internal quotations and citations omitted); *Begala v. PNC Bank*, 163 F.3d 948, 950 (6th Cir.1998) ("We have repeatedly stated that [the Truth in Lending Act] is a remedial statute and, therefore, should be given a broad, liberal construction in favor of the consumer.") (cited in *Schnall v. Marine Midland Bank*, 225 F.3d 263, 267 (2d Cir.2000)); *McCuin v. Secretary of Health and Human Services*, 817 F.2d 161, 174 (1st Cir.1987) ("[T]he Social Security Act, under whose authority the regulations were promulgated, is a remedial statute, to be broadly construed and liberally applied in favor of beneficiaries.") (cited in *Gutierrez v. Bowen*, 898 F.2d 307, 310 n. 3 (2d Cir.1990)).

Therefore, the Court believes that the WARN Act's structure supports the Court's interpretation of its plain language.

 **3. Legislative History.** When authoritative legislative history is available, courts may in appropriate circumstances cautiously look to that history to confirm an interpretation that is otherwise grounded in the text and structure of the act itself. *Murphy ex rel. Estate of Payne v. United States*, 340 F.Supp.2d 160, 171 (D.Conn.2004) ("The

Court understands all too well that using legislative history to construe a statute is often akin to chasing a mirage."). As the Second Circuit has stated,

> [r]esort to authoritative legislative history may be justified where there is an open question as to the meaning of a word or phrase in a statute, or where a statute is silent on an issue of fundamental importance to its correct application. As a general matter, we may consider reliable legislative history where ... the statute is susceptible to divergent understandings and, equally important, where there exists authoritative legislative history that assists in discerning what Congress actually meant.

*Gayle*, 342 F.3d at 93–94.

Here, the State Plaintiffs and Defendants agreed at oral argument that the available authoritative legislative history—the Conference Report—did not address the specific issue of whether a State had standing to sue under the WARN Act.[9] *See generally* H.R. Conf. Rep. No. 100–576, at 1045 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2078. Having reviewed the WARN Act's legislative history, the Court agrees. Therefore, the legislative history is, at best, neutral, though some jurists might construe Congress' silence to work against the State Plaintiffs in view of the strong interpretative presumption that the term "person" does not include the state unless indicated otherwise.[10]

9. Though counsel for the State Plaintiffs conceded this point at oral argument, that concession did not stop him from attempting an argument based on legislative history. At oral argument and in the State Plaintiffs' memorandum in opposition to the motion to dismiss, the State Plaintiffs made much of the fact that: (1) the WARN Act was originally part of the Economic Dislocation and Worker Adjustment Assistance Act ("EDWAA"), 29 U.S.C. § 1501 *et seq.;* (2) the WARN Act and EDWAA were "closely interrelated," H.R. Conf. Rep. No. 100–576, at 1045 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2078, 2078; and (3) the regulations promulgated under the WARN Act encouraged coordination with job placement and retraining programs, with specific reference to the Trade Adjustment Assistance Program and the EDWAA. *See* 20 C.F.R. § 639.1(f); *see generally* Pls.' Mem. of Law in Opp'n to Mot. to Dismiss, at 21 [doc. # 40]. The State Plaintiffs argued that the relationship between these var-

ious federal programs and the WARN Act heightened the importance of notice to states under the WARN Act, and that this fact should somehow lead the Court to conclude that the State Plaintiffs have standing to sue under the WARN Act. It is sufficient to note that the Court does not believe that the State Plaintiffs' speculative use of this purported "legislative history" justifies ignoring the plain, unambiguous meaning of the statute's text. *See United Food*, 517 U.S. at 550, 116 S.Ct. 1529 ("Speculation loses, for the more natural reading of the statute's text ... always prevails ...").

10. *Compare Koons Buick Pontiac GMC, Inc. v. Nigh,* —— U.S. ——, 125 S.Ct. 460, 467–69, 160 L.Ed.2d 389, 2004 WL 2707418, at *8 (2004) (looking to statutory and legislative history and finding "scant indication" that Congress intended to change the meaning of a particular clause in a statute) (citing *Church of Scientology of Cal.*

In sum, having considered the text, structure, and legislative history of § 2104(a)(5) of the WARN Act, the Court concludes that it does not authorize the State Plaintiffs to sue under the Act. If states like Connecticut wish to be able to sue under the WARN Act, they will need to get that authority from the Congress. Accordingly, the Court grants Defendants' motion to dismiss the State Plaintiffs for lack of standing.

## B.

■ As to the remaining issue presented in Defendants' motion to dismiss—whether Defendant Dolce is an "employer" as defined under WARN—this Court believes that this question involves disputed material issues of fact that cannot be resolved on a motion to dismiss.

■ As a preliminary matter, the Court notes that the Second Circuit has held that a hotel management company such as Dolce can be considered an "employer" under the WARN Act if it meets all the criteria of the Act, even if the owners of the hotel (OLY, in this case) exercised the ultimate authority for the closing of the hotel. *See Local 217, Hotel & Restaurant Employees Union v. MHM, Inc.*, 976 F.2d 805, 808 (2d Cir.1992); *but see Administaff Companies, Inc. v. New York Joint Bd., Shirt & Leisurewear Div.*, 337 F.3d 454, 456 n. 1 (5th Cir.2003) (distinguishing *MHM*). Furthermore, although Dolce's letters to the Plaintiffs recognize the potential applicability of the WARN Act, this Court will not equate this recognition to an admission of the applicability of the Act. The statute itself and the Department of Labor's regulations for the WARN Act require employers to err on the side of giving notice, regardless of whether they are legally required to do so. *See* 29 U.S.C. § 2106 ("Procedures encouraged where not required. It is the sense of Congress that an employer who is not required to comply with the notice requirements of section 2102 of this title should, to the extent possible, provide notice to its employees about a proposal to close a

plant or permanently reduce its workforce."); 20 C.F.R. § 639.1(e) ("Notice in ambiguous situations.... It is therefore prudent for employers to weigh the desirability of advance notice against the possibility of expensive and time-consuming litigation to resolve disputes where notice has not been given. The Department encourages employers to give notice in all circumstances.").

The WARN Act defines an "employer" as "any business enterprise that employs—(A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)." 29 U.S.C. § 2101(a)(1). Whether Dolce is an "employer" hinges on the precise number of full-time and part-time employees working for the company at certain times relevant to the WARN Act. According to the Department of Labor's regulations under the WARN Act:

> The point in time at which the number of employees is to be measured for the purpose of determining coverage is *the date the first notice is required to be given.* If this "snapshot" of the number of employees employed on that date is clearly unrepresentative of the ordinary or average employment level, then a more representative number can be used to determine coverage. Examples of unrepresentative employment levels include cases when the level is near the peak or trough of an employment cycle or when large upward or downward shifts in the number of employees occur around the time notice is to be given. A more representative number may be an average number of employees over a recent period of time or the number of employees on an alternative date which is more representative of normal employment levels. Alternative methods cannot be used to evade the purpose of WARN, and should only be used in unusual circumstances.

20 C.F.R. § 639.5(a)(2) (emphasis added).

Through competing affidavits (each taking polar opposite positions), the parties dispute

---

*v. IRS,* 484 U.S. 9, 17–18, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987) (analogizing silence in legislative history to Sir Arthur Conan Doyle's "dog that didn't bark")); *with id.* at ——, 2004 WL at

*13 (Scalia, J., dissenting) (criticizing the "Canon of Canine Silence" invoked by the Court, particularly when used to contradict the clear text of the statute).

whether Dolce employed a sufficient number of employees to trigger the WARN Act's notice requirements on October 30, 2003— the date the first notice would have been required to be given. *Compare* Affidavit of Kimberly Saucier, attached to Def. Dolce's Mem. of Law in Support of Mot. to Dismiss [doc. # 21]; *with* Affidavit of Anne F.F. Eisenman, Pls.' Mem. of Law in Opp'n to Mot. to Dismiss, at Ex. B [doc. # 40]. Construing, as the Court must, all facts presented by Plaintiffs in a light most favorable to them, the Court cannot say that Plaintiffs "can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Bolt Elec. v. City of New York*, 53 F.3d 465, 469 (2d Cir.1995). Therefore, the portion of Defendants' motion to dismiss arguing that Dolce is not an "employer" under the WARN Act is denied, subject to renewal, if appropriate, in a motion for summary judgment following discovery.

### III.

■ Because WARN Act lawsuits are permitted only against employers with more than 100 employees, WARN actions are particularly amenable to class-based litigation. *See Finnan v. L.F. Rothschild & Co.*, 726 F.Supp. 460, 465 (S.D.N.Y.1989) ("By its terms, WARN is applicable only in the context of employer action which affects a large number of employees."). The following section considers both the State and City Plaintiffs' Motion for Class Certification [doc. # 31], and Plaintiff Lee's Motion for Class Certification [doc. # 62].

Rule 23 of the *Federal Rules of Civil Procedure* governs class certification. The rule establishes a two-step analysis for analyzing the propriety of class certification, see *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), and Plaintiffs bear the burden of demonstrating that the proposed class meets all of the rule's requirements. *Id.; see also Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir.1999). First, Plaintiffs must satisfy the following four requirements set forth in Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *see also In re Visa Check/MasterMoney*, 280 F.3d 124, 133 (2d Cir.2001). Second, Plaintiffs must show that the proposed class qualifies under at least one of the subsections of Rule 23(b). *Id.; see also Amchem*, 521 U.S. at 614, 117 S.Ct. 2231.

■ The Second Circuit has instructed district courts that Rule 23 is to be given a liberal rather than a restrictive interpretation. *See Civic Ass'n of the Deaf v. Giuliani*, 915 F.Supp. 622, 632 (S.D.N.Y.1996) (citing *Korn v. Franchard Corp.*, 456 F.2d 1206, 1208–09 (2d Cir.1972); *Green v. Wolf Corp.*, 406 F.2d 291, 298, 301 (2d Cir.1968)). And in determining whether to certify the class, the Court is required to consider only the allegations set forth in the complaint and take all of Plaintiffs' allegations as true. *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir.1978); *see also Karen L. v. Physicians Health Servs., Inc.*, 202 F.R.D. 94, 99 (D.Conn.2001).

■ As a preliminary matter, because this Court determined above that the State Plaintiffs lack standing to maintain an action on their own behalf, they cannot be considered an adequate party to act as a representative plaintiff in this class action. *See, e.g., Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) ("That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally. have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal quotation marks omitted); *Martens v. Thomann*, 273 F.3d 159, 173 n. 10 (2d Cir.2001) ("[U]pon certification of a class, the class representative must have individual stand-

ing."). Furthermore, in light of the appearance of independent counsel on behalf of Ms. Lee, the City Plaintiffs at oral argument expressly withdrew their motion to serve as the class representative, without prejudice to their rights in either this case or future cases to serve as a class representative in an action brought under the WARN Act.

Having dispensed with both the State Plaintiffs and City Plaintiffs as possible class representatives, the Court will now consider whether Ms. Lee has satisfied each of the Rule 23's requirements. The Court notes at the outset that at oral argument and in their briefing to the Court, Defendants did not object to Ms. Lee serving as lead plaintiff in a WARN Act class action.

### A. Rule 23(a)

 Numerosity. Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R.Civ.P. 23(a)(1); *see Amchem,* 521 U.S. at 607 n. 8, 117 S.Ct. 2231; *see also Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997) (*per curiam*). The plaintiff is not required to provide an exact number of potential class members. *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993) ("Courts have not required evidence of exact class size or identity of class members in order to satisfy the numerosity requirement."). Additionally, "courts may make common sense assumptions to support a finding of numerosity." *Weissman v. ABC Fin. Servs., Inc.,* 203 F.R.D. 81, 84 (E.D.N.Y.2001) (internal quotation omitted). The Second Circuit has found that "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995). Furthermore, in *Robidoux,* the Second Circuit lists the following other considerations for finding numerosity: "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux,* 987 F.2d at 936.

 The members of Ms. Lee's proposed class consist of all of the 117 former employees of Dolce. That number is large enough to satisfy the numerosity requirement, particularly in light of the allegations that the members of this class have limited financial resources and lack the legal sophistication and financial wherewithal necessary to bring individual suits to enforce their rights under the WARN Act. The Court therefore holds that the proposed class satisfies the numerosity requirement. *See, e.g., Cruz v. Robert Abbey, Inc.,* 778 F.Supp. 605, 612 (E.D.N.Y. 1991) (holding that a proposed class of at least 114 persons in a WARN action was so numerous that joinder of all members was impracticable).

 Commonality & Typicality. Rule 23(a) next requires the existence of "questions of law or fact common to the class." Fed.R.Civ.P. 23(a). These questions must "predominate over questions peculiar to individual members of the class." *Civic Ass'n of the Deaf,* 915 F.Supp. at 632–33 ("When such common questions do predominate, differences among the questions raised by individual members will not defeat commonality."). Courts have commented that "the test for commonality is not demanding" and is met so long as there is at least one issue common to the class. *Mullen v. Treasure Chest Casino, LLC.,* 186 F.3d 620, 625 (5th Cir.1999). The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a). This requirement is usually met when the representative plaintiffs are subject to the same policies as the putative class members. *See Robidoux,* 987 F.2d at 936–37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."). The Second Circuit has noted that the commonality and typicality requirements " 'tend to merge' because 'both serve as guideposts for determining whether ... the named plaintiffs claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.' " *Caridad,* 191 F.3d at 291 (quoting *Gen. Tel. Co. v.*

*Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

■■■ The commonality and typicality requirements are fairly easily met in an action brought under the WARN Act. Ms. Lee brings her claim against Defendants under 29 U.S.C. § 2104(a)(5), which grants standing to aggrieved employees to sue their employer on their own behalf and on behalf of other similarly situated aggrieved employees, in order to recover back pay and benefits under 29 U.S.C. § 2104(a)(1), for the period of time during which notice of an impending layoff or termination was owed, but not given as required by 29 U.S.C. § 2102(a)(1). The class of former Dolce employees have precisely the same legal claims as Ms. Lee, with the only differences affecting possible damages. Accordingly, the Court concludes that the proposed members of Ms. Lee's class have common questions of law and fact and that her claim is typical of those whom she seeks to represent. *See, e.g., Presser v. Key Food Stores Co-op., Inc.,* 218 F.R.D. 53, 58 (E.D.N.Y.2003) (finding that a WARN Act plaintiff met the commonality and typicality requirements); *Roquet v. Anderson,* No. 02 C 2689, 2003 WL 21994019, at *2 (N.D.Ill. Aug.18, 2003) (same); *Moreno v. DFG Foods, LLC,* No. 02 C 4019, 2003 WL 21183903, at *7–9 (N.D.Ill. May 21, 2003) (same).

■■■ **Fair and Adequate Representation.** Rule 23(a) also requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R.Civ.P. 23(a). This provision requires plaintiffs to "demonstrate both that their attorneys are competent to handle the litigation and that the named Plaintiffs do not have interests that are antagonistic to the class." *Raymond v. Rowland,* 220 F.R.D. 173, 180 (D.Conn.2004) (citing *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992)). Ms. Lee's counsel represented in their moving papers that they are experienced in "single and multi-party employment-related actions" and are currently class counsel in a certified class action pending in the District. Pl. Delia A. Lee's Mem. L. in Support of Mot. for Class Certification [doc. # 62] at 10–11. Defendants do not dispute these representations, and as a consequence, all parties agreed at oral argument that Ms. Lee has demonstrated that her attorneys are competent to handle this litigation.

Ms. Lee also represents that she does not have any interests antagonistic to, or conflicting with, the interests of the members of the class, and that she is committed to having the issues set forth in the complaint resolved efficiently, in a class-wide manner. *Id.* at 10. There has been no suggestion, let alone showing, that Ms. Lee has interests antagonistic to the class or that she is not otherwise a proper class representative, and it seems apparent from the Amended Complaint that Ms. Lee's interests in this litigation are congruent with those of the class members. Accordingly, Ms. Lee has satisfied the fair and adequate representation requirements of Rule 23(a).

## B. Rule 23(b)

In addition to satisfying each of the requirements of Rule 23(a), a plaintiff seeking class action status must also show that the proposed class qualifies under at least one of the subsections of Rule 23(b). *See Amchem,* 521 U.S. at 614, 117 S.Ct. 2231. Though the Amended Complaint [doc. # 36] seeks class certification under Rule 23(b)(3), Ms. Lee's class certification motion also invokes Rules 23(b)(1) and 23(b)(2). *See* Pl. Delia A. Lee's Mem. L. in Support of Mot. for Class Certification [doc. # 62]. Therefore, this Court will consider certifying the class under Rule 23(b)(1), (b)(2) and/or (b)(3).

■■■ Class actions under Rules 23(b)(1) and 23(b)(2) are often described as "mandatory" classes, because individual class members may not opt-out of the class action and pursue separate litigation that might prejudice other class members or the defendant. Use of mandatory classes for litigation seeking only or primarily monetary damages may raise constitutional concerns. *See Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 845–46, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (discussing Seventh Amendment and Due Process concerns related to mandatory class actions for monetary damages). In her memorandum in support of class certification [doc. # 62], Ms. Lee presents no serious argu-

ments in favor of certification under Rule 23(b)(1) or 23(b)(2), other than a conclusory assertion that Defendants are obligated to treat class members alike. Cognizant of the Supreme Court's cautions in *Ortiz* and for reasons set forth below, the Court concludes that certifying this WARN Act action under either Rule 23(b)(1) or 23(b)(2) is inappropriate.

■ **Rule 23(b)(1).** Rule 23(b)(1)(A) allows certification of class actions to prevent the risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Fed.R.Civ.P. 23(b)(1)(A); *see also Amchem*, 521 U.S. at 614, 117 S.Ct. 2231. Although Rule 23(b)(1)(A)'s language on "inconsistent or varying adjudications" is broad enough arguably to encompass all types of class actions, it has not been applied in that manner. *See* Alba Conte & Herbert Newburg, 2 *Newberg on Class Actions* § 4.04 (4th ed.2002); *see also Petrolito v. Arrow Financial Services, LLC,* 221 F.R.D. 303, 313 (D.Conn.2004). Instead, Rule 23(b)(1)(A) is principally designed so that multiple grievances stemming from a single action by the defendant (such as a decision by a municipality or a public nuisance created by a factory) do not result in multiple courts imposing incompatible standards of conduct upon the defendant. Since the WARN Act expressly sets forth the notice requirements that defendant employers must follow and delineates the possible sanctions against the employer (which are solely monetary damages or penalties), there seems to be little risk that courts will impose inconsistent or incompatible standards of conduct on Defendants. *See Presser v. Key Food Stores Co-op., Inc.,* 218 F.R.D. 53, 57 n. 4 (E.D.N.Y.2003) (refusing to certify a WARN Act class action under Rule 23(b)(1)); *Bledsoe v. Emery Worldwide Airlines,* 258 F.Supp.2d 780, 802 (S.D.Ohio 2003) (refusing to certify a WARN Act class action under Rule 23(b)(1)(A)); *see also Vaughter v. Eastern Air Lines, Inc.,* 817 F.2d 685, 690 (11th Cir.1987) ("Normally, the mere possibility that a defendant might be liable for payments to some potential class members but not to others does not constitute the 'incompatible standards of conduct'

of concern in Rule 23(b)(1)(A)."); *but see Cruz,* 778 F.Supp. at 612 (certifying a class under *both* Rule 23(b)(1) and 23(b)(3), and stating, without discussion, that WARN Act plaintiffs met the requirements of Rule 23(b)(1)(A), because "absent class certification, there is a risk of inconsistent adjudication."). Defendants do not contend otherwise.

Furthermore, many courts considering the language of Rule 23(b)(1)(A) have held that it does not apply to actions seeking compensatory damages. *In re Dennis Greenman Securities Litigation,* 829 F.2d 1539, 1545 (11th Cir.1987) (citing cases); *see, e.g., Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1180, 1193 (9th Cir.2001) ("Rule 23(b)(1)(A) certification requires more, however, than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts.... Certification under Rule 23(b)(1)(A) is therefore not appropriate in an action for damages.") (internal quotations and citations omitted), *amended by* 273 F.3d 1266 (9th Cir.2001). Underlying this is " 'a concern that if compensatory damage actions can be certified under Rule 23(b)(1)(A), then all actions could be certified under the section, thereby making the other subsections of Rule 23 meaningless, particularly Rule 23(b)(3).' " *Petrolito,* 221 F.R.D. at 313 (quoting *In re Dennis Greenman,* 829 F.2d at 1545). Accordingly, the Court will not certify this action under Rule 23(b)(1)(A).

■ Rule 23(b)(1)(B) allows certification of class actions to prevent the risk of "adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1)(B); *see also Amchem,* 521 U.S. at 614, 117 S.Ct. 2231. Class actions certified under Rule 23(b)(1)(B) are designed to protect plaintiffs from one another, and they typically involve limited pools of money that may not be adequate to cover the claims of all plaintiffs. The mandatory class action device of Rule 23(b)(1)(B) allows for equita-

ble distribution of those limited funds, so that the first plaintiffs bringing claims do not deprive later suing plaintiffs the opportunity to press their own claims. *See Ortiz,* 527 U.S. at 838–39, 119 S.Ct. 2295 (describing the necessary conditions to qualify under the "limited fund" theory of certification under Rule 23(b)(1)(B)).

Ms. Lee does not claim that the Defendants have sufficiently limited resources that certification under Rule 23(b)(1)(B) is necessary. Therefore, the Court will not certify this action under Rule 23(b)(1)(B). *See, e.g., Balentine v. Triad Intern. Maintenance Corp.,* No. 01–10357–BC, 2002 WL 31749163, at *4 (E.D.Mich. Oct.17, 2002) (refusing to certify a WARN Act class action under Rule 23(b)(1)(B)); *but see Washington v. Aircap Indus. Corp.,* 831 F.Supp. 1292, 1294 (D.S.C. 1993) (certifying a WARN Act class action under Rule 23(b)(1)(B) out of concerns of issue preclusion); *Cruz,* 778 F.Supp. at 612 (certifying a class under *both* Rule 23(b)(1) and 23(b)(3), and stating, without discussion, that WARN Act plaintiffs met the requirements of Rule 23(b)(1)(B), because "adjudication of facts concerning lay-offs executed by [the employer] will dispose of all of the classes' WARN claims.").

■ **Rule 23(b)(2).** Class certification under Rule 23(b)(2) is appropriate if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2); *see Visa Check/MasterMoney,* 280 F.3d at 133. Class actions certified under Rule 23(b)(2) primarily seek injunctive, rather than monetary relief. *See Morgan v. Metropolitan Dist. Com'n,* 222 F.R.D. 220, 235 (D.Conn.2004). In fact, the Second Circuit has explained that

> before allowing [Rule 23](b)(2) certification a district court should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both rea-

sonably necessary and appropriate were the plaintiffs to succeed on the merits. *Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 164 (2d Cir.2001).

■ Ms. Lee fails to satisfy the requirements set forth in *Robinson* for Rule 23(b)(2) certification since the WARN Act does not provide for injunctive relief, and as repeatedly stressed above, the Act's remedies are exclusive. *See* 29 U.S.C. § 2104(b); *see also Staudt v. Glastron,* 92 F.3d 312, 314 (5th Cir.1996) ("The exclusive remedy for violation of [the WARN Act] is a civil action for statutory damages and attorney's fees."); *MHM, Inc.,* 976 F.2d at 809 (holding that WARN contemplates damages only and preliminary injunction not available). Fittingly, Ms. Lee's Memorandum in Support of Class Certification [doc. # 62] fails even to mention injunctive or declaratory relief, and the Amended Complaint [doc. # 36] seeks only monetary damages for the employees of Dolce. *See id.* at 8, ¶¶ 1, 3, 4 (requesting sixty days of back pay and other benefits for aggrieved employees, $500 for each day of violation for the City of Hartford, and costs and attorneys' fees). Because Ms. Lee seeks only monetary damages for herself and for the other similarly situated former employees of Dolce, the Court concludes that class certification under Rule 23(b)(2) is not appropriate. *See, e.g., Presser,* 218 F.R.D. at 57 n. 4 (refusing to certify a WARN Act class action under Rule 23(b)(2) because plaintiff did not seek injunctive or declaratory relief in conjunction with the WARN Act claim); *Gomez v. American Garment Finishers Corp.,* 200 F.R.D. 579, 583–84 (W.D.Tex.2000) (same); *United Paperworkers Int'l Union v. Specialty Paperboard, Inc.,* 829 F.Supp. 671, 675 (D.Vt.1992) (same).

**Rule 23(b)(3).** Class certification is proper under Rule 23(b)(3), however, as was requested in the Amended Complaint [doc. # 36]. Rule 23(b)(3) permits a court to certify a class if "the court finds that the questions of law or fact common to the members of the class predominate or fact common to the members of class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and effi-

cient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3); *see Visa Check/MasterMoney,* 280 F.3d at 133. The factors relevant to certifying a class action under Rule 23(b)(3) include:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Visa Check/MasterMoney,* 280 F.3d at 136; *Amchem,* 521 U.S. at 623, 117 S.Ct. 2231.

"In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *Visa Check/MasterMoney,* 280 F.3d at 136 (citation and quotation marks omitted). "'The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir.2002) (quoting *Amchem,* 521 U.S. at 623, 117 S.Ct. 2231). "It is a *more demanding* criterion than the commonality inquiry under Rule 23(a)." *Id.* (emphasis added). With Rule 23(b)(3), "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem,* 521 U.S. at 617, 117 S.Ct. 2231.

■ The Court's discussion of Rule 23(a)'s commonality and typicality requirements informs its inquiry under Rule 23(b)(3). This is not a complex case involving multiple claims and issues, or conflicting bodies of law. Establishing WARN Act liability turns on fairly straightforward issues common to the entire class, including: whether Defendants are "employer[s]" under the Act; whether a "mass layoff" or "plant closing" took place on or about December 30, 2003; and, if so, whether Defendants gave the proper notice required by the Act. *See* 29 U.S.C. § 2101(a)(1); *see also Gomez,* 200 F.R.D. at 584. Defendants may also seek to establish defenses common to the entire class. *See, e.g.,* 29 U.S.C. § 2104(a)(4) (establishing employer's "good faith" and "reasonable grounds" defenses); 29 U.S.C. § 2102(2)(A) (shortening notification period where employer actively seeking capital to avoid layoffs). Furthermore, if liability is established, the calculation of total back pay and benefits owed to each member of the class is a fairly simple matter that will require little individualized effort. *See Balentine,* 2002 WL 31749163, at *4. To be sure, some damage and benefit calculations—especially for those members of the class with significant medical expenses or who obtained alternate employment during the alleged violation period—may require more individualized effort. However, these issues are not likely to predominate, and Defendants do not claim otherwise.

Moreover, requiring each of the 117 putative class members to establish Defendants' liability in individual lawsuits would be intolerably onerous on the employees and would be inefficient for both Defendants and the courts. *See Gomez,* 200 F.R.D. at 584. Finally, this class of putative plaintiffs will be reasonably easy for class counsel to manage, considering that each putative plaintiff's name and address likely can be obtained through Defendants' payroll records. *See id.*

Because common questions and facts predominate over the individual class members' issues and a class action is an appropriate vehicle for the fair and efficient adjudication of this controversy, the Court grants Plaintiffs' request to certify this action under Rule 23(b)(3) with Ms. Lee as lead plaintiff and class representative.

**IV.**

In summary, the Court concludes as follows: the State Plaintiffs lack standing under

the WARN Act; there are material issues of fact as to whether Defendant Dolce is an "employer" under the Act; and Ms. Lee has demonstrated that this action should be certified as a class action under Rule 23(b)(3) with her as the lead plaintiff and class representative. Therefore, the Court enters the following orders:

(i) GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss [doc. # 20] and Defendants' Revised Motion to Dismiss [doc. # 46];

(ii) DENIES the State Plaintiffs' and City Plaintiffs' Motion for Class Certification [doc. # 31]; and

(iii) GRANTS IN PART and DENIES IN PART Plaintiff Lee's Motion for Class Certification [doc. # 62] insofar as the Court denies Plaintiff's request for class certification under Rule 23(b)(1) and Rule 23(b)(2) but grants Plaintiff's request for certification of the following class under Rule 23(b)(3):

A class consisting of all former employees of Dolce International/Hartford Inc. ("Dolce") who were not given sixty days prior written notice of their terminations by Dolce on December 30, 2003, and within any thirty day period including December 30, 2003, as a result of a plant closing or mass layoff pursuant to the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101, *et seq.*

(iv) Plaintiff Delia A. Lee shall serve as lead plaintiff in this matter and counsel of record for Ms. Lee, namely Thomas G. Moukawsher, Esquire, and Ian O. Smith, Esquire, are hereby appointed counsel for the designated class.

(v) Plaintiffs shall, at their expense, provide appropriate notice to all class members via first-class mail and in conformance with the requirements of Rule 23 of the *Federal Rules of Civil Procedure.*

(vi) Counsel for the Class and Defendants shall confer and submit to the Court by no later than **January 5, 2005** a jointly proposed class action management plan, which should include the

following: (1) an agreed upon document that will be used to provide notice upon all putative members of the class; (2) a proposed timetable for providing notice to the class and a proposed deadline for putative class members to opt out of the class; (3) a proposed mechanism allowing class members to enter their own individual appearances in this matter; (4) a list of all ascertainable class members, with their last known mailing address; and (5) any other issues that counsel for the Class and Defendants believe are appropriate to bring to the Court's attention.

IT IS SO ORDERED.